UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **OUTPATIENT SPECIALTY SURGERY PARTNERS, LTD. D/B/A "SPECIAL SURGERY OF HOUSTON,"** § § § § | | |
| Plaintiff, § | | |
| VS. § | CIVIL ACTION NO. 4:15-CV-2983 | |
| § | | |
| **UNITEDHEALTHCARE INSURANCE COMPANY D/B/A UNITEDHEALTHCARE COMMUNITY PLAN,** *et al*, § § § § | | |
| Defendants. § § | | |

## MEMORANDUM AND ORDER

Before the Court is the motion to dismiss filed by Defendants UnitedHealthcare Insurance Company, UnitedHealthcare of Texas, Inc., and United HealthCare Services, Inc. (Doc. No. 9.) After carefully considering the motions, response, reply, and applicable law, the Court finds that the motion should be granted in part and denied in part with leave to amend.

### I. BACKGROUND

This case arises under the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. §§ 1132–33. Plaintiff Outpatient Specialty Surgery Partners, Ltd. d/b/a Special Surgery of Houston ("Special Surgery") owns and operates outpatient surgery centers in the greater Houston area. (Doc. No. 1 ¶ 9.) Special Surgery alleges that it is the express assignee of numerous participants and beneficiaries who are covered under employee welfare benefit plans (the "plans") that are governed by ERISA. The following facts are drawn from the complaint.

Special Surgery has sued three defendants. Defendant UnitedHealthCare Insurance Company is a health insurance company that provides, underwrites, and insures the plans. Defendant United HealthCare of Texas, Inc. is a health maintenance organization or "HMO" that

provides the plans. Defendant United HealthCare Services, Inc. is a third-party administrator that processes payments and provides other administrative services for the plans. (*Id.* ¶¶ 4–6, 10–12.)

The plans classify healthcare providers as in-network or out-of-network providers. In-network providers have contracted with an insurance company to provide medical care for the plan participants at a pre-determined, discounted rate. By contrast, out-of-network providers, like Special Surgery, do not have contracts with the plans. Therefore, out-of-network providers must call the plans or their administrators to verify coverage for the participant seeking care and find out how much the plans will pay the out-of-network provider. (*Id.* ¶ 16.)

Before providing treatment, Special Surgery made verification calls for its patients who are participants or beneficiaries of the plans. Special Surgery treated its patients in reliance on the information obtained during those calls. Also before treatment, Special Surgery's patients signed a document entitled "Assignment of Benefits, Assignment of Rights to Pursue ERISA and Other Legal and Administrative Claims Associated with My Health Insurance and/or Health Benefit Plan (Including Breach of Fiduciary Duty) and Designation of Authorized Representative" (the "Assignment").

After treatment, Special Surgery submitted claims to Defendants on the uniform billing form at the address provided during the verification calls. Special Surgery marked field 53 on the form with a "Y" for yes to indicate that it had been assigned the patients' benefits and rights. (*Id.* ¶ 19.) Defendants processed the claims and made some payments to Special Surgery. However, Defendants often asserted that various plan provisions either barred payment entirely or limited the payment amount.

Special Surgery contacted Defendants to find out why its claims were not paid or were underpaid. Special Surgery often appealed the adverse claim determinations. It also requested

copies of summary plan descriptions and other relevant plan documents. Defendants did not provide these documents. In addition, Defendants in many cases did not notify Special Surgery about the applicable procedures for review of adverse decisions.

Special Surgery filed its complaint on October 13, 2015. Special Surgery alleges three claims for relief. First, Special Surgery alleges that Defendants violated ERISA by failing to provide summary plan descriptions and other relevant documents. Second, Special Surgery alleges that Defendants violated ERISA by not providing a reasonable opportunity for a full and fair review of the denied claims. Third, Special Surgery alleges that Defendants breached their fiduciary duties by violating ERISA.

On January 20, 2016, Defendants filed a motion to dismiss. (Doc. No. 9.) Special Surgery filed its response on March 1. (Doc. No. 16.) Defendants filed their reply on March 18. (Doc. No. 21.) The motion is ripe for adjudication.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). The court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557

(5th Cir. 2008) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Special Surgery, as the party asserting jurisdiction, bears the burden on a Rule 12(b)(1) motion. *See Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010).

Rule 12(b)(6) permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 605 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678).

### III. LEGAL FRAMEWORK

ERISA's civil enforcement provision permits a "participant or beneficiary" to bring a civil action. 29 U.S.C. § 1132(a)(1). A participant or beneficiary may bring claims "for the relief provided for in subsection (c) of this section" or "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(A)–(B). Subsection (c), as it relates to Special Surgery's claims, permits a participant or beneficiary to bring claims for a plan administrator's failure or refusal "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal

results from matters reasonably beyond the control of the administrator)." *Id.* § 1132(c)(1)(B). Section 1132(a)(3) further authorizes a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Section 1133 requires "every employee benefit plan" to follow certain claims procedures. Every plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." *Id.* § 1133(1). Every plan must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.* § 1133(2).

"It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005). To determine whether a healthcare provider has derivate standing through an assignment, the court "must 'examine and consider the entire [assignment] and give effect to all provisions such that none are rendered meaningless.'" *Id.* at 334 (quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004)).

IV. ANALYSIS

    A. Standing

Defendants offer four arguments as to why Special Surgery's complaint should be dismissed for lack of standing. The Court will consider each in turn.

### 1. Whether lawsuits must be brought in the name of the participants

Defendants first argue that the Assignment requires any lawsuit to be brought in the name of the participant, but Special Surgery has filed this lawsuit in its own name. Defendants rely on the following language from the Assignment: Special Surgery "as my assignee and my designated authorized representative may bring suit against any such health care benefit plan, employee benefit plan, plan administrator or insurance company in my name with derivative standing at provider's expense." (Doc. No. 1, Ex. A.) Special Surgery responds that it is not bringing its claims in its own right but rather derivatively as the assignee of the plan participants and beneficiaries.

The Court agrees with Special Surgery. In the very first sentence of its complaint, Special Surgery alleges that it is "an express assignee of numerous 'participants' and 'beneficiaries' who are covered under employee welfare benefits plans.'" (Doc. No. 1, ¶ 1.) Defendants support their position with *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012), which dismissed ERISA claims because the plaintiffs—healthcare providers like Special Surgery—"failed to allege they were assigned the right to bring these causes of action." Here, however, Special Surgery has clearly made that allegation.

In addition, the Assignment contains the following provisions:

- I hereby assign and convey directly to Special Surgery Of Houston, as my designated authorized representative, all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services, treatments, therapies, and/or medications rendered or provided by Special Surgery Of Houston, regardless of its managed care network participation status.

- I intend by this assignment and designation of authorized representative to convey to Special Surgery Of Houston all of my rights to claim (or place a lien on) the medical benefits related to the services, treatments, therapies, and/or medications provided by Special Surgery Of Houston, including rights to any settlement, insurance or applicable legal or administrative remedies (including damages arising from ERISA breach of fiduciary duty claims). This constitutes an express

6

and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

(Doc. No. 1, Ex. A.) These provisions show that Special Surgery is an assignee of its patients as to at least some of their rights.

Defendants appear to argue that the Assignment designates Special Surgery as the patients' authorized representative, not their assignee. Authorized representatives must sue "on behalf of" patients, and only assignees may file suit in their own name. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1143 (C.D. Cal. 2015). However, Defendants have not explained why the Assignment cannot do both. In fact, it makes sense that a healthcare provider would ask patients to convey both statuses. While healthcare providers must be assignees of participants or beneficiaries to have standing under ERISA's civil enforcement provision, ERISA regulations require that an employee benefit plan's "claims procedures do not preclude an *authorized representative* of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2560.503–1(b)(4) (emphasis added). As a result, a healthcare provider may wish to be an assignee and an authorized representative to be able to pursue a full range of legal and administrative remedies.

In footnote 15 of its complaint, Special Surgery references a spreadsheet containing the names of the patients and claims that are the subject of its lawsuit. Special Surgery has provided this spreadsheet to Defendants, but did not file it with its complaint due to privacy concerns. In its response, Special Surgery requests leave to amend its complaint to attach that spreadsheet. (Doc. No. 16 at 18.) The Court grants this request. Of course, confidential information should be redacted or the spreadsheet should be filed under seal.

### 2. Whether certain claims were expressly assigned

Second, Defendants argue that the Assignment does not expressly assign the claims for

failure to provide plan documents and failure to provide a full and fair review. According to Defendants, this lack of express assignment means that Special Surgery does not have standing to bring these claims. *See Total Sleep Diagnostics, Inc. v. United Healthcare Ins. Co.*, No. CIV.A. 06-4153, 2009 WL 928646, at *3 (E.D. La. Mar. 31, 2009) (concluding that "an assignee may seek penalties for the failure to produce plan documents under 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c) when it has specifically been assigned that right"). Special Surgery interprets the Assignment as expressly assigning all rights to pursue ERISA and other legal and administrative remedies related to its patients' plans.

Defendants rely on *Sanctuary Surgical Center, Inc. v. Aetna, Inc.*, 546 F. App'x 846 (11 Cir. 2013), but that case is factually distinguishable. The assignment there stated, "I authorize insurance benefits to be paid directly to the provider." *Sanctuary Surgical Center, Inc.*, 546 F. App'x at 852. The Eleventh Circuit held that this language conveyed only the right to receive benefits and could not be stretched to include "the right to assert claims for breach of fiduciary duty or civil penalties." *Id.*

The Assignment in this case is much more broadly worded than the one in *Sanctuary Surgical Center*. Here, the Assignment expressly conveys rights to pursue all legal or administrative claims arising under its patients' employee benefits plans that concern medical expenses incurred by Special Surgery. The Assignment states:

> In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to Special Surgery Of Houston any legal or administrative claim or chose in action arising under any group health plan, employee benefits plan, health insurance or tort feasor insurance concerning medical expenses incurred as a result of the medical services, treatments, therapies, and/or medications I receive from Special Surgery Of Houston (including any right to pursue those legal or administrative claims or chose [i]n action). This constitutes an express and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

(Doc. No. 1, Ex. A.) The Assignment further provides:

> The assignee and/or designated representative of Special Surgery Of Houston[] is given the right by me to (1) obtain information regarding the claim to the same extent as me [and] (5) participate in any administrative and judicial actions and pursue claims or chose in action or right against any liable party, insurance company, employee benefit plan, health care benefit plan, or plan administrator.

(*Id.*) In addition, the Assignment states, "Unless revoked, this assignment is valid for all administrative and judicial reviews under . . . ERISA . . . ." (*Id.*)

The Court finds that these provisions encompass Special Surgery's claims for failure to provide plan documents and failure to provide a full and fair review. Both claims "arise under" the employee benefit plans because those plans are subject to the ERISA requirements to provide plan documents upon request and to provide a full and fair review in the claims procedures. *See* 29 U.S.C. §§ 1132(c)(1), 1133(2). In addition, they concern medical expenses incurred from medical treatment received from Special Surgery. Special Surgery's interest in obtaining the plan documents is to evaluate its allegations that it was wrongly denied partial or full payment for the services it provided. The ERISA requirement of a full and fair review is triggered when a claim for payment for services has been denied. *See id.* § 1133(2).

Special Surgery's claim for failure to provide plan documents has further support from the Assignment's explicit conveyance of the right to obtain information regarding the claim to the same extent as the patient. Courts have held an assignment of the right to receive benefits conveys standing for the assignee to sue the plan directly to recover those benefits. *See, e.g.*, *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d at 896. Likewise, the assignment of the right to obtain information conveys standing on an assignee to sue a plan directly to obtain those documents.

Defendant's reliance on *Mid-Town Surgical Center, L.L.P. v. Humana Health Plan of*

*Texas, Inc.*, 16 F. Supp. 3d 767 (S.D. Tex. 2014) (Atlas, J.), is unavailing. The court in *Mid-Town Surgical Center* faced an assignment with nearly identical language to one paragraph from the Assignment in this case:

> In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to Mid–Town Surgical Center any legal or administrative claim or chose in action arising under any group health plan, employee benefits plan, health insurance or tortfeasor insurance concerning medical expenses incurred as a result of the medical services I received from the above-named provider (including any right to pursue those legal or administrative claims or chose in action). This constitutes an express and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

16 F. Supp. 3d at 776. The court rejected the effectiveness of this assignment primarily due to timing. *Id.* at 775–76. Because the assignments were signed after the complaint was filed, the court found that they could not confer standing at the time the complaint was filed. The court further noted its view that the assignment expressly assigned only ERISA breach of fiduciary duty claims and not claims for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for failure to provide full and fair review under ERISA, or for violating ERISA's claim procedures. However, the court did not proffer reasons for its ruling. Moreover, the court's dismissal of the claims under RICO, ERISA breach of fiduciary duty, failure to provide full and fair review under ERISA, and violation of ERISA's claim procedures was without prejudice. By interpreting the assignment to not include anything but the ERISA breach of fiduciary claim, the court's interpretation seems to render the phrase "and other legal and/or administrative claims" meaningless.

Importantly, the Assignment here contains additional language than the one before the court in *Mid-Town Surgical Center*. The Assignment expressly permits Special Surgery to obtain information regarding the claim to the same extent as the patient and to participate in and pursue

10

administrative and judicial actions. It further states that it is valid for "all administrative and judicial reviews under . . . ERISA." (Doc. No. 1, Ex. A.)

### 3. Claim for breach of fiduciary duty

Third, Defendants say that Special Surgery cannot bring its claim for breach of fiduciary duty under § 1132(a)(3) because it potentially has a claim for benefits. Defendants rely on *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506 (5th Cir. 2000). In *McCall*, the Fifth Circuit dismissed the plaintiffs' "breach of fiduciary duty claim based on denial of benefits" because "[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § [1132](a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to § [1132](a)(3)." Special Surgery responds that it has not yet asserted a claim for benefits because Defendants have not provided the plan documents, a review of which is necessary to determine Special Surgery's entitlement to benefits.

The Court finds *McCall* distinguishable. There, the plaintiffs claimed that the defendant breached its fiduciary duty by denying their claims for benefits. As a result, their fiduciary duty claim was entirely dependent on a claim for benefits. By contrast, Special Surgery has not asserted a claim for benefits. Nor is its claim for breach of fiduciary duty based on a claim for benefits. Rather, Special Surgery's fiduciary duty claim appears to be based on the Defendants' alleged failure to provide plan documents as requested. (Doc. No. 1 ¶ 21.)

### 4. Claims arising under the ERS plan

Fourth, Defendants argue that Special Surgery lacks standing to bring claims arising under a plan operated by the Employees Retirement System of Texas ("ERS") in this forum because Texas Insurance Code Section 1551.359 requires judicial review to take place exclusively in a state district court in Travis County. Special Surgery concedes that its claims arising under the

ERS plan should be dismissed: "While any claims against the ERS lies in the Texas courts system, dismissal of this one claim does not serve as a basis to dismiss the remainder of Plaintiffs' claims." (Doc. No. 16 at 18.) Accordingly, the Court will dismiss claims arising under the ERS plan.

### B. Failure to State a Claim

#### 1. Claim for failure to provide plan documents

Regarding the claim for failure to provide plan documents, Defendants argue for dismissal on three grounds. Defendants contend that they are not the administrators of the Performance Food Group, Inc. plan, that Special Surgery has not alleged that it provided signed releases, and that Special Surgery did not make a proper request for plan documents.

##### a. Whether Defendants are "administrators" of the Performance Food Group, Inc. Plan

First, Defendants say that the plan documents for the Performance Food Group, Inc. Employee Benefits Plan establish that they are not the plan "administrators" that must comply with the obligation in 29 U.S.C. § 1024(b)(4) to provide plan documents. Special Surgery responds by relying on the Fifth Circuit's opinion in *Fish v. Metropolitan Life Insurance Co.*, 895 F.2d 1073 (5th Cir. 1990). There, the Fifth Circuit left open the question of whether a de facto plan administrator was required to furnish plan documents.

The Court is unpersuaded by *Fisher* because it is factually distinguishable. Although *Fisher* expressed openness to recognizing a de facto administrator, the agreement for administrative services between the plan administrator and the defendant delegated "a wide range of responsibility" and the summary plan description told plan participants that the plan administrator had designated the defendant as its agent to administer the plan. Here, the Administrative Services Agreement between United HealthCare Services, Inc. and Performance

Food Group, Inc. states that United HealthCare Services, Inc. is "not the Plan Administrator of the Plan" and that "[a]ny references in this Agreement to [United HealthCare Services, Inc.] 'administering the Plan' are descriptive only and do not confer . . . anything beyond certain agreed upon claim administration duties." (Doc. No. 10, App. 005.) In addition, unlike the summary plan description in *Fisher*, the Summary Plan Description here states that UnitedHealthcare merely "helps [the] employer to administer claims." (Doc. No. 10, App. 011.) Because Defendants have shown that they are not the plan administrator of the Performance Food Group, Inc. Employee Benefits Plan, Special Surgery's claims for failure to produce those plan documents must be dismissed.

### b.  Whether Special Surgery provided signed releases

Second, Defendants argue that Special Surgery failed to allege that it provided Defendants with a signed authorization to release plan documents to Special Surgery from each participant, which is necessary to trigger the disclosure obligation. Special Surgery points to the properly coded box on the claim form that signifies an assignment of benefits to the healthcare provider.

The Court agrees with Defendants that this box demonstrating an assignment of benefits is insufficient.  The Sixth Circuit, following a Department of Labor advisory opinion letter, has held that a plan administrator is not required to furnish plan documents under 29 U.S.C. § 1024(b)(4) to a third party who is not the plan participant or beneficiary unless the third party provides written authorization from the plan participant or beneficiary to release the plan documents. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir. 1994). Special Surgery has not given the Court any reason to depart from this persuasive authority. Accordingly, Special Surgery's claim for failure to produce plan documents—for all plans except the ERS plan and the Performance Food Group plan discussed above—will be dismissed without prejudice. Special

Surgery has fifteen days to file an amended complaint curing this deficiency.

### c. Whether Special Surgery's request was proper

Third, Defendants contend that the complaint fails to allege that Special Surgery made a proper request for plan documents. According to Defendants, Special Surgery sent a request to non-specific "United Healthcare," which is not notice to any of Defendants. Special Surgery says its attorney's letter to United Heathcare creates a fact issue on whether Defendants received notice. The Court is unpersuaded by Defendants' argument because the Summary Plan Description for the Performance Food Group plan refers to United HeathCare Services, Inc. as "UnitedHealthcare." (Doc. No. 10, App. 011.) Moreover, a UnitedHealthcare employee acknowledged receipt of the letter in an email. (Doc. No. 1, Ex. G.) Consequently, the Court will not dismiss the claims at this stage for lack of notice.

### 2. Claim for failure to provide a full and fair review

Turning to the claim for failure to provide a full and fair review, Defendants argue that the exhibits attached to the complaint establish that they substantially complied with the requirements of 29 U.S.C. § 1133. The explanation of benefits advises that the service did "not meet coverage requirements as defined in [the] plan." (Doc. No. 1, Ex. C.) The online claim status page explains that the provider was out-of-network and that the "service was paid based on amounts set by Medicare or other sources if no Medicare amount is available." (*Id.*, Ex. D.) Defendants contend that these explanations satisfy § 1133.

Special Surgery, however, points to regulations requiring that the notice of a benefit determination include, among other things, "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(ii). Because the explanation of benefits and claim status page do not reference a specific plan provision, the Court will not dismiss these

claims at this time.

Defendants further contend that a claim for violating § 1133 must be brought against the plan itself and is not a stand-alone claim but merely serves to excuse a failure to exhaust administrative remedies. Although § 1133 imposes obligations directly on "the plan," the regulations quoted above refer to "the plan administrator." 29 C.F.R. § 2560.503-1(g)(1). Furthermore, Special Surgery's allegations could constitute a "continuous procedural violation," which is an exception to the rule that "[f]ailure to fulfill procedural requirements generally does not give rise to a substantive damage remedy." *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 211 (5th Cir. 1995). Special Surgery alleges that all of the explanations of benefits or online claim status pages contained "similar statements" to the two exhibits attached to the complaint. (Doc. No. 1 ¶ 19.)

In addition, Defendants fault the complaint for not alleging which specific terms of the plan were violated by Defendants' denial or underpayment of benefits. However, Special Surgery has not yet asserted a claim for benefits. Moreover, as related to the claim it has asserted for failure to provide a full and fair review, Special Surgery has identified the language in the explanations of benefits or online claim status pages that allegedly constitutes inadequate notice under § 1133(1).

### 3. Claim for Breach of Fiduciary Duty

Finally, Defendants urge dismissal of the claim for breach of fiduciary duty because the complaint does not specify which plan provisions the Defendants allegedly breached and does not allege that Defendants caused the plan to engage in the prohibited transactions listed in 29 U.S.C. § 1106. Section 1104(a)(1)(D) requires fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the

provisions of this subchapter and subchapter III of this chapter." Section 1104 falls in subchapter I, which includes § 1132 (requiring disclosure of plan documents) and § 1133 (requiring a full and fair review). Because those provisions trump whatever may be in the plan documents, the Court does not think it is necessary for Special Surgery to identify the specific plan provisions. While § 1106 provides specific ways in which a fiduciary violates its duties, those are in addition to the general duties imposed by § 1104. Special Surgery's claim is based on the latter and not the former.

## V. CONCLUSION

For the reasons above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The claims under the ERS plan and the claim for failure to produce plan documents under the Performance Food Group, Inc. Employee Benefits Plan are **DISMISSED WITH PREJUDICE**. The claim for failure to provide plan documents is **DISMISSED WITHOUT PREJUDICE** with Special Surgery having fifteen days to file an amended pleading. As to the claims for failure to provide a full and fair review and for breach of fiduciary duty, the motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 24th day of June, 2016.

THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE